# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| OKLAHOMA HOSPITAL MEDICINE PHYSICIANS, LLC, | )<br>)<br>) |
| OKLAHOMA INFECTIOUS DISEASE SPECIALISTS, LLC, | )<br>)<br>) Case No.<br>) |
| TULSA HOSPITAL MEDICINE PHYSICIANS GROUP, LLC, | )<br>)<br>) |
| SC HOSPITAL MEDICINE PHYSICIANS, LLC, | )<br>) |
| COLUMBIANA EMERGENCY PHYSICIANS, LLC, | )<br>) |
| EASTERN KANSAS EMERGENCY PHYSICIANS, LLC | )<br>)<br>) |
| GREEN VALLEY EMERGENCY PHYSICIANS, LLC, | )<br>) |
| GREEN VALLEY HOSPITAL MEDICINE PHYSICIANS, LLC, | )<br>)<br>) |
| JACKSON EMERGENCY PHYSICIANS, LLC, | )<br>) |
| MONROE EMERGENCY PHYSICIANS, LLC, | )<br>) |
| OKLAHOMA EMERGENCY PHYSICIANS, LLC, and<br>POST ACUTE PHYSICIANS, LLC, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>)<br>) |
| GOTTLIEB LLC,<br>and<br>VENTRA HEALTH, INC., | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

1

**COMPLAINT**

Plaintiffs Oklahoma Hospital Medicine Physicians, LLC; Oklahoma Infectious Disease Specialists, LLC; Tulsa Hospital Medicine Physicians Group, LLC (the "Coding Physician Groups") and SC Hospital Medicine Physicians, LLC; Columbiana Emergency Physicians, LLC; Eastern Kansas Emergency Physicians, LLC; Green Valley Emergency Physicians, LLC; Green Valley Hospital Medicine Physicians, LLC; Jackson Emergency Physicians, LLC; Monroe Emergency Physicians, LLC; Oklahoma Emergency Physicians, LLC; and Post Acute Physicians, LLC (together with the Coding Physician Groups, the "Physician Groups") hereby file this Complaint against Defendants Gottlieb LLC ("Gottlieb") and Ventra Health, Inc. ("Ventra"), and allege as follows:

**INTRODUCTION**

This is a contract and tort action related to (1) separate Billing Services Agreements ("BSAs") between each of the Physician Groups and Gottlieb, and (2) one Billing Services Termination Agreement ("BSTA") between the Physician Groups and Ventra (including Gottlieb). Pursuant to the BSAs, Gottlieb agreed to provide coding, billing, posting, reconciliation, and collecting services to all of the Physician Groups. The BSAs set forth the manner in which the coding should be performed. Without informing the subset of the Coding Physician Groups, however, Ventra changed its coding philosophy for hospital medicine visits, which dramatically affected the revenue received by the Coding Physician Groups. Although Ventra admitted that it had made a mistake in implementing the new coding philosophy and represented that it would review and re-code the charts, Ventra subsequently changed its position and only agreed to re-code certain of the charts. The result is that the Coding Physician Groups have forfeited more than

2

$1,000,000 in anticipated revenue and have been forced to hire a third-party consultant to review the charts for Ventra's errors.

Prior to this incident and because of other issues, all of the Physician Groups decided to terminate the BSAs. Pursuant to the BSTA, Ventra and Gottlieb agreed to provide transition services to the Physician Groups. Ventra and Gottlieb also agreed to prioritize resolving the unposted, unreconciled, unmatched, and suspense cash in the Physician Groups' accounts. As of this filing, however, over $1,000,000 in payments that should have been worked by Ventra remains unposted and unreconciled. The result is that the Physician Groups cannot allocate the cash to specific patients and have been forced to hire a third-party billing service, at a considerable expense, to review the accounts receivables.

**PARTIES**

1. Non-party Core Clinical Partners, LLC ("Core") is a Georgia limited liability company that is the sole member of several of the Physician Groups. Core has its principal place of business in Atlanta, Georgia.

2. Plaintiff Oklahoma Hospital Medicine Physicians, LLC is an Oklahoma limited liability company that provides emergency medical and hospital medicine services in Oklahoma. Core is the only member of Oklahoma Hospital Medicine Physicians, LLC.

3. Plaintiff Oklahoma Infectious Disease Specialists, LLC is an Oklahoma limited liability company that provides emergency medical and hospital medicine services in Oklahoma. Oklahoma Infectious Disease Specialists, LLC has one individual member, who is a citizen of Georgia.

4. Plaintiff Tulsa Hospital Medicine Physicians Group, LLC is an Oklahoma limited liability company that provides emergency medical and hospital medicine services in Oklahoma. Core is the only member of Tulsa Hospital Medicine Physicians Group, LLC.

5. Plaintiff SC Hospital Medicine Physicians, LLC is a South Carolina limited liability company that provides emergency medical and hospital medicine services in South Carolina. Core is the only member of SC Hospital Medicine Physicians, LLC.

6. Plaintiff Columbiana Emergency Physicians, LLC is an Ohio limited liability company that provides emergency medical and hospital medicine services in Ohio. Core is the only member of Columbiana Emergency Physicians, LLC.

7. Plaintiff Eastern Kansas Emergency Physicians, LLC is a Kansas limited liability company that provides emergency medical and hospital medicine services in Kansas. Eastern Kansas Emergency Physicians, LLC has one individual member, who is a citizen of Georgia.

8. Plaintiff Green Valley Emergency Physicians, LLC is an Arizona limited liability company that provides emergency medical and hospital medicine services in Kentucky. Core is the only member of Green Valley Emergency Physicians, LLC.

9. Plaintiff Green Valley Hospital Medicine Physicians, LLC is an Arizona limited liability company that provides emergency medical and hospital medicine services in Kentucky. Core is the only member of Green Valley Hospital Medicine Physicians, LLC.

10. Plaintiff Jackson Emergency Physicians, LLC is a Missouri limited liability company that provides emergency medical and hospital medicine services in Missouri. Core is the only member of Jackson Emergency Physicians, LLC.

11. Plaintiff Monroe Emergency Physicians, LLC is a Louisiana limited liability company that provides emergency medical and hospital medicine services in Louisiana. The

members of Monroe Emergency Physicians, LLC are Core and two individuals, who are citizens of Louisiana.

12. Plaintiff Oklahoma Emergency Physicians, LLC is an Oklahoma limited liability company that provides emergency medical and hospital medicine services in Oklahoma. Core is the only member of Oklahoma Emergency Physicians, LLC.

13. Plaintiff Post Acute Physicians, LLC is an Oklahoma limited liability company that provides emergency medical and hospital medicine services in Oklahoma. Core is the only member of Post Acute Physicians, LLC.

14. Defendant Gottlieb is a Florida limited liability company with its principal place of business in Dallas, Texas. Upon information and belief, all of the members of Gottlieb are citizens of Florida. Gottlieb may be served by service on its registered agent at Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

15. In 2021, Gottlieb merged with another company to form Ventra. Defendant Ventra is a Delaware corporation with its principal place of business in Dallas, Texas. Ventra may be served by service on its registered agent at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

## JURISDICTION AND VENUE

### A. Subject matter jurisdiction

16. This Court has original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1).

17. "[T]he citizenship of a[n] LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

18. A corporation is a citizen of every state in which it is incorporated and in which it has its principal place of business. 28 U.S.C. § 1332(c)(1).

19. The Physician Groups are limited liability companies, and their members are a combination of Core and individuals who are citizens of Georgia or Louisiana.

20. Defendant Gottlieb is a Florida limited liability company. Upon information and belief, all of the members of Gottlieb are citizens of Florida.

21. Defendant Ventra is a Delaware corporation with its principal place of business in Dallas, Texas.

22. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the controversy is between citizens of different states and the amount in controversy exceeds $75,000.

**B.     Personal jurisdiction**

23. This Court has personal jurisdiction over the Defendants because they maintain their principal place of business in Texas and conduct substantial business in Texas.

24. Pursuant to the BSAs, Gottlieb agreed to Dallas County, Texas as the venue for any proceedings arising under the BSAs.

**C.     Venue**

25. Venue is proper in this District and Division pursuant to the BSAs, insomuch as the BSAs contain an express waiver by Gottlieb of any objection to venue in this District and Division.

26. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) because the Defendants maintain their principal place of business in this District and Division and the BSAs that form the basis of the Complaint are governed by Texas law.

## FACTS

27. On October 1, 2021, Gottlieb entered into separate BSAs with Columbiana Emergency Physicians, LLC; Green Valley Emergency Physicians, LLC; Green Valley Hospital Medicine Physicians, LLC; Jackson Emergency Physicians, LLC; Monroe Emergency Physicians, LLC; Oklahoma Emergency Physicians, LLC; Oklahoma Hospital Medicine Physicians, LLC; SC Hospital Medicine Physicians, LLC; and Tulsa Hospital Medicine Physicians Group, LLC.

28. On January 19, 2022, Gottlieb entered into a BSA with Post Acute Physicians, LLC.

29. On March 1, 2022, Gottlieb entered into a BSA with Oklahoma Infectious Disease Specialists, LLC.

30. On March 22, 2022, Gottlieb entered into a BSA with Eastern Kansas Emergency Physicians, LLC.

31. Pursuant to the BSAs, Gottlieb agreed to provide specific billing and collection services to the Physician Groups, which are set forth in Exhibit A to the BSAs.

32. The services set forth in Exhibit A to the BSAs include (1) correctly coding the medical records of the Physician Groups according to the guidelines adopted by the Centers for Medicare & Medicaid Services ("CMS"), (2) promptly preparing and submitting insurance claims upon receipt of the necessary information, (3) promptly posting payments, (4) reporting on billing results, (5) meeting regularly with the Physician Groups to discuss billing results, and (6) performing reasonable and diligent routine collection efforts to secure payments from patients, primary and secondary payors or others before transferring an account to an outside collection agency.

33. In performing its services under the BSA, Gottleib warranted to the Physician Groups that it would perform such services with reasonable skill and care.

34. In exchange for these services, the Physician Groups agreed to pay a set fee on a monthly basis for each hospital medicine encounter and emergency medicine chart coded and billed by Gottlieb.

35. In each of the BSAs, Gottlieb warranted that it would perform the services with reasonable skill and care.

36. Either party could terminate the BSA for cause based on a material breach of a term or condition by the other party, which was not reasonably remedied to the reasonable satisfaction of the non-breaching party within forty-five (45) days of the non-breaching party providing written notice to the breaching party describing the breach in detail.

37. Alternatively, either party could terminate the BSA without cause after the initial one-year anniversary date, provided that the terminating party gave proper notice and unambiguous written notice of intent to terminate to the other party at least one hundred twenty (120) days in advance of the renewal date.

38. Termination did not, however, release or discharge either party from any obligation, debt, or liability that previously accrued and remained to be performed upon the date of termination.

39. The BSAs provide that, upon termination, Gottlieb would make available to the Physician Groups information regarding open accounts, without additional charge, and otherwise furnish reasonable cooperation and assistance in any transition to internal billing or to a successor billing agent.

40. On May 31, 2023, Core notified Ventra of its intent to terminate the BSAs with the Physician Groups for reasons unrelated to this Complaint.

41. On September 30, 2023, pursuant to the notice dated May 31, 2023, the Physician Groups terminated the BSAs.

42. Shortly thereafter, Core discovered a significant drop in revenue being collected on hospital medicine claims coded and billed by Ventra and raised the issue with Ventra. Core and Ventra exchanged several e-mails about the issue, as both parties worked to identify the cause of the drop in revenue.

43. In mid-October 2023, Core escalated the issue to Ventra's management team, requesting their involvement in a resolution.

44. On or about October 12, 2023, Core and Ventra participated in a conference call, during which Ventra acknowledged that there was a coding problem, which caused the drop in revenue.

45. As admitted by Ventra representatives on the October 12, 2023 conference call, the coding problem stemmed from Ventra's decision on September 1, 2023, to unilaterally change its coding protocol for certain hospital medicine visits that drastically reduced the acuity levels being coded and billed for those encounters at the Coding Physician Groups. During that same call, Ventra admitted that it did not provide Core advance warning of this coding protocol change, that it did not do anything to "test" how its unilateral coding change might affect reimbursement for Core, and further admitted that it did not know how its unilateral coding change would affect Core's reimbursement. Finally, on that same call, Ventra's representatives acknowledged that "there were things that should have been done differently" with respect to the coding change and expressed an intent to make Core whole due to its revenue loss by re-coding claims "to make sure [the claims] are accurate" or making some payment to Core.

46. On or about October 18, 2023, however, Ventra changed its position and refused to re-code the charts for certain of the hospital medicine visits. Although Ventra agreed to re-code the charts for *initial* hospital medicine visits, Ventra did not agree to the same for *subsequent* hospital medicine visits for the Coding Physician Groups.

47. On December 8, 2023, Ventra sent Core a notice of alleged breach of several BSAs by, and a demand for payment of alleged unpaid amounts owed by, the Physician Groups.

48. On December 11, 2023, Core responded to the letter from Ventra, putting Ventra on notice of the breach of the BSAs.

49. On December 20, 2023, the Physician Groups and Ventra (including Gottlieb) entered into the BSTA.

50. Pursuant to the BSTA, Ventra and Gottlieb agreed to provide specific transition services to the Physician Groups through April 30, 2024.

51. Specifically, Ventra and Gottlieb agreed to (1) continue coding any remaining emergency medicine charts in accordance with their standard coding guidelines, (2) bill and receive payments, and (3) process patient refunds on behalf of the Physician Groups for both emergency medicine and hospital medicine visits through April 30, 2024.

52. In addition, Ventra and Gottlieb agreed to prioritize resolving the unposted, unreconciled, unmatched, and suspense cash in the Physician Groups' accounts.

53. Despite Ventra and Gottlieb's promises in the BSTA, as of early April 2024, Core observed a large backlog of unposted and unmatched cash in the Physician Groups' accounts. Core advised Ventra via multiple e-mail and phone communications of Core's concerns that the backlog would not be addressed prior to April 30, 2024, and that Ventra's failure to post or reconcile these amounts constituted a breach of the BSTA and would damage the Physician Groups. Despite

Core's efforts, as of April 30, 2024, when Ventra ceased working the Physician Groups' accounts, over $1,000,000 remained unposted and unreconciled.

54. On September 17, 2024, in accordance with the terms of the BSAs, Core and the Physician Groups filed a Request for Mediation with the American Arbitration Association.

55. That same day, Core shared the Request for Mediation and a Tolling Agreement with Ventra.

56. After Ventra indicated that it was not willing to enter into a Tolling Agreement, Core requested that Ventra mediate the dispute on an expedited basis prior to October 4, 2024, and secured a mediator acceptable to Ventra to mediate the dispute on October 2, 2024. Ventra did not agree to mediate the dispute prior to October 4, 2024.

## CLAIMS FOR RELIEF

### COUNT ONE
### (Coding Physician Groups' Breach of Contract Claim against Defendants Ventra and Gottlieb)

57. The Coding Physician Groups incorporate by reference all prior allegations in this Complaint as if fully restated herein.

58. The BSAs are valid and enforceable contractual agreements between the Coding Physician Groups and Gottlieb, which is now part of Ventra.

59. The Coding Physician Groups have fully performed their obligations under the BSAs.

60. Pursuant to the BSAs, Gottlieb agreed to provide billing and collection services to the Coding Physician Groups, which are set forth in Exhibit A to the BSAs.

61. Gottlieb, however, ultimately failed to perform these contractual obligations.

11

62. By implementing the new coding for hospital medicine visits adopted by Ventra, Ventra and Gottlieb failed to perform reasonable and diligent routine collection efforts and breached the terms of the BSAs.

63. The Coding Physician Groups have been damaged by this breach in an amount to be determined at trial, but in no event less than $1,300,000.

## COUNT TWO
### (Coding Physician Groups' Breach of Warranty Claim against Defendants Ventra and Gottlieb)

64. The Coding Physician Groups incorporate by reference all prior allegations in this Complaint as if fully restated herein.

65. The BSAs are valid and enforceable contractual agreements between the Coding Physician Groups and Gottlieb, which is now part of Ventra.

66. The Coding Physician Groups have fully performed their obligations under the BSAs.

67. Pursuant to the BSAs, Gottlieb agreed to provide billing and collection services to the Coding Physician Groups, which are set forth in Exhibit A to the BSAs.

68. Gottlieb warranted that it would perform the services with reasonable skill and care.

69. By permitting Ventra to apply the incorrect coding to subsequent hospital medicine visits, Gottlieb breached its warranty to the Coding Physician Groups.

70. The Coding Physician Groups have been damaged by this breach in an amount to be determined at trial, but in no event less than $1,300,000.

## COUNT THREE
### (Physician Groups' Breach of Contract Claim against Defendants Ventra and Gottlieb)

71. The Physician Groups incorporate by reference all prior allegations in this Complaint as if fully restated herein.

72. The BSTA is a valid and enforceable contractual agreement between the Physician Groups and Ventra (including Gottlieb).

73. The Physician Groups have fully performed their obligations under the BSTA.

74. Pursuant to the BSTA, Ventra (including Gottlieb) agreed to prioritize resolving the unposted, unreconciled, unmatched, and suspense cash in the Physician Groups' accounts.

75. Ventra has not posted or reconciled the cash belonging to the Physician Groups, forcing the Physician Groups to hire a third-party billing service to review the accounts receivables and determine how the funds should be attributed to patients.

76. Without the posted and reconciled cash, the Physician Groups cannot determine which claims have been paid by patients or third-party insurers, and which claims remain open and require follow up with patients or insurers to obtain payment. As a result, the Physician Groups must now pay another third-party service to do the work Ventra promised to do under the BSTA.

77. As a direct and proximate cause of Ventra and Gottlieb's actions, the Physician Groups have sustained significant damages in an amount to be determined at trial, but in no event less than $30,000.

## COUNT FOUR
### (Coding Physician Groups' Negligence Claim against Defendants Ventra and Gottlieb)

78. The Coding Physician Groups incorporate by reference all prior allegations in this Complaint as if fully restated herein.

79. As the acquirer of Gottlieb, Ventra owed the Coding Physician Groups a duty to exercise reasonable care in carrying out the terms of the BSAs following the acquisition.

80. Ventra breached that duty by incorrectly changing its coding philosophy for hospital medicine visits without notifying the Coding Physician Groups.

81. Ventra further breached that duty by applying the incorrect codes to subsequent hospital visits and refusing to fix its error.

82. The Coding Physician Groups have been damaged by this negligence in an amount to be determined at trial, but in no event less than $1,300,000.

## COUNT FIVE
### (Coding Physician Groups' Negligent Misrepresentation Claim against Defendants Ventra and Gottlieb)

83. The Coding Physician Groups incorporate by reference all prior allegations in this Complaint as if fully restated herein.

84. Gottlieb, which is now part of Ventra, agreed to code the Coding Physician Groups' records according to CMS's 1995 guidelines.

85. On September 1, 2023, Ventra unilaterally decided to change its coding philosophy for hospital medicine visits based upon an incorrect interpretation of CMS's coding guidelines.

86. Ventra failed to disclose to the Coding Physician Groups the change in its coding philosophy for hospital medicine visits.

87. Ventra only acknowledged the change in coding when Core raised the issue regarding the drop in revenue.

88. On the October 12, 2024 conference call, Ventra expressed an intent to make Core whole due to its revenue loss by re-coding claims "to make sure [the claims] are accurate" or making some payment to Core.

89. Despite promising to review and re-code the charts, Ventra has not corrected the coding for subsequent hospital medicine visits.

90. The Coding Physician Groups relied upon the contractual representations made by Gottlieb about coding and the subsequent representations made by Ventra about correcting the coding errors.

91. The Coding Physician Groups would not have contracted with Gottlieb had they known that Ventra would change its approach to coding without notifying or consulting the Coding Physician Groups.

92. The Coding Physician Groups have been damaged by these misrepresentations in an amount to be determined at trial, but in no event less than $1,300,000.

## JURY DEMAND

The Physician Groups respectfully demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, the Physician Groups respectfully request the following relief:

(a) That judgment be entered in favor of the Physician Groups and against Defendants Ventra and Gottlieb as to all Counts for such damages as may be proven at trial;

(b) That the Court award the Physician Groups their costs and expenses, including reasonable attorneys' fees, in prosecuting this action; and

(c) That the Court award all such further relief as it may deem just, equitable, and proper.

Respectfully submitted this 3rd day of October, 2024.

**CANTEY HANGER LLP**

*/s/ Joshua D. Ross*
Joshua D. Ross
Texas Bar No. 24046760
600 W. 6th Street, Suite 300
Fort Worth, Texas 76102
Tel: (817) 877-2800
jross@canteyhanger.com

**PARKER HUDSON RAINER & DOBBS LLP**

*/s/ Robert M. Brennan*
Robert M. Brennan (*pro hac vice forthcoming*)
Georgia Bar No. 079798
303 Peachtree Street, NE
Suite 3600
Atlanta, Georgia 30308
Tel: (404) 523-5300
rmb@phrd.com