IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OKLAHOMA HOSPITAL MEDICINE PHYSICIANS, LLC, et al., | § § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:24-CV-2492-D |
| VS. | § § | |
| GOTTLIEB LLC, et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The plaintiffs in this diversity action (collectively, plaintiffs or the "Physician Groups")[1] move under Fed. R. Civ. P. 37(a) to compel defendant Ventra Health, Inc. ("Ventra") to respond to their First Set of Interrogatories ("Interrogatories"), to produce documents responsive to their First Requests for the Production of Documents and Things (collectively, the "Discovery Requests"), and for an award of attorney's fees. For the following reasons, the court grants in part and denies in part plaintiffs' motion to compel; grants their request for attorney's fees; and orders Ventra to fully respond to plaintiffs' Discovery Requests within 30 days.

---

[1]Plaintiffs are Oklahoma Hospital Medicine Physicians, LLC; Oklahoma Infectious Disease Specialists, LLC; Tulsa Hospital Medicine Physicians Group, LLC; SC Hospital Medicine Physicians, LLC; Columbiana Emergency Physicians, LLC; Eastern Kansas Emergency Physicians, LLC; Green Valley Emergency Physicians, LLC; Green Valley Hospital Medicine Physicians, LLC; Jackson Emergency Physicians, LLC; Monroe Emergency Physicians, LLC; Oklahoma Emergency Physicians, LLC; and Post Acute Physicians, LLC.

I

This diversity action arises out of the alleged failure of defendants Gottlieb LLC ("Gottlieb") and Ventra (Gottlieb's successor in interest) to perform under several Billing Services Agreements and a Billing Services Termination Agreement by, *inter alia*, unilaterally implementing a new, and incorrect, coding protocol for hospital medicine visits, which resulted in a dramatic loss of revenue for the plaintiff Physician Groups.

Plaintiffs served their Discovery Requests on Ventra on April 30, 2025. Ventra's responses were due on May 30, 2025. On May 29, 2025 Ventra requested, and plaintiffs agreed to, a 30-day extension of the deadline to respond. When Ventra failed to respond by the new deadline (June 29, 2025), plaintiffs filed the instant motion to compel.

On August 22, 2025, the day plaintiffs filed the instant motion (and 54 days late), Ventra served its objections and responses to plaintiffs' Discovery Requests and produced 1,487 pages of responsive documents. In the weeks that followed, Ventra obtained new counsel, amended its discovery responses to provide additional information and remove all objections, and produced an additional 223 pages of documents. Based on the foregoing, which Ventra explained in response to plaintiffs' motion to compel, the court entered an order on September 16, 2025 stating that it would defer a ruling on the motion until September 30, 2025, at the earliest, because it believed it was possible that the instant discovery dispute could be resolved without court intervention.

Plaintiffs filed a reply on September 30, 2025, contending that Ventra failed to show good cause for its failure to meet clear discovery deadlines and that its belated amended

responses were still deficient. Ventra then requested and obtained leave of court to file a surreply to address plaintiffs' new arguments raised in their reply. The court also permitted plaintiffs to file a final reply. Briefing on the motion to compel is now complete, and the court is deciding the motion on the papers, without oral argument.

II

Under Rule 26(b)(1), "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." And, under Rule 37(a)(3)(B), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when the party from whom discovery is sought fails to produce requested documents or respond to an interrogatory or request for admission. The burden is on the party resisting discovery—here, Ventra—to establish why the motion to compel should not be granted. *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (Ramirez, J.); *see also Lozano v. Dorel Juv. Grp.*, 2010 WL 11619687, at *1 (N.D. Tex. May 26, 2010) (Means, J.) ("Generally, the burden is on the party seeking to avoid compliance with a discovery request to show that the request is improper[,]" such that "in the context of a motion to compel, the party who opposes discovery must 'show specifically how [the request] is not relevant or how [the request] is overly broad, burdensome, or oppressive.'" (second and third alterations in original) (quoting *McLeod, Alexander, Powell and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990))).

III

Plaintiffs move to compel documents withheld as privileged, contending that Ventra is not permitted to assert any objections, including based on attorney-client privilege, because it failed to timely respond to plaintiffs' Discovery Requests.

A

"[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). And "if a party fails to timely respond in writing after being served with a request for production of documents, it is appropriate for the Court to find that the party's objections are waived, unless the court finds good cause and excuses that failure." *Richmond v. SW Closeouts, Inc.*, 2016 WL 3090672, at *5 (N.D. Tex. June 2, 2016) (Horan, J.).

> In deciding whether good cause exists, courts consider (1) the length of the delay in failing to object; (2) the reason for the delay; (3) whether there was any bad faith or dilatory action of the party that failed to object; (4) whether the party seeking discovery was prejudiced by the failure; (5) whether the document production request was properly framed and not excessively burdensome; and (6) whether waiver would impose an excessively harsh result on the defaulting party.

*Evanston Ins. Co. v. McDonnell Coates LLP*, 2021 WL 2400992, at *3 (N.D. Tex. June 11, 2021) (Fitzwater, J.) (citing *Clewis v. Medco Health Sols., Inc.*, 2013 WL 5354574, at *3 (N.D. Tex. Sept. 25, 2013) (Horan, J.)).

B

Ventra contends that good cause exists for its failure to timely respond to plaintiffs' Discovery Requests.[2] It concedes that it "admittedly neglected to serve formal written responses to Plaintiff's Rule 33 and 34 requests in a timely fashion," but maintains that its

> neglect was not intentional, it was not part of a plan to thwart discovery, and it was not otherwise due to unjustifiable delay, inexcusable conduct, or bad faith. Moreover, Plaintiffs have not been harmed by the delay in receiving formal, written responses in light of the fact that Defendant has been producing responsive documents on a rolling basis, which the Parties have been in discussion about. Despite the untimely responses, Defendant has more than complied with [its] discovery obligations in this case.

D. Surreply (ECF No. 49) at 4 (footnote omitted).

Plaintiffs respond that Ventra's 54-day delay in serving discovery responses and 100-day delay in producing its first privilege log is "excessive and unjustified," Ps. Final Reply (ECF No. 50) at 3; that Ventra has provided no reason for the delay other than neglect; that the chronology of events shows, at the very least, deliberate indifference, not inadvertence, because "Ventra ignored the June 29 deadline, served objections only after being faced with a Motion to Compel, and waited nearly two more months to produce a deficient privilege log—only after Plaintiffs' Reply identified its absence as an additional basis for waiver," *id.*

---

[2]Plaintiffs argue that Ventra should not be permitted to raise "good cause" for the first time in its surreply. Although the court does not typically consider arguments raised for the first time in a reply brief (or a surreply), it will consider Ventra's argument in deciding the instant motion because plaintiffs did not clearly raise the waiver of attorney-client privilege until their reply brief, and, in any event, plaintiffs have been given a sufficient opportunity to respond to this argument.

at 4 (bold font omitted); that they have suffered substantial and ongoing prejudice because they have been forced to spend significant time and resources briefing the motion to compel, reviewing multiple rounds of defective objections, and addressing an incomplete and deficient privilege log; and that waiver under the present circumstances is not unduly harsh.

C

The court in its discretion declines to impose the "serious sanction" of waiver of Ventra's objections based on privilege. *Tex. Disposal Sys., Inc. v. FCCI Ins. Co.*, 2019 WL 13550966, at *2 (W.D. Tex. Sept. 27, 2019) (citation omitted). Waiver of an objection is "not automatic," *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 156 (S.D. Tex. 2009), and Rule 34, which governs the time for responding to requests for production, does not mandate waiver upon a party's failure to timely object. "The federal rules, case law, and commentators suggest that waiver of a privilege or objection is a 'serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith.'" *Fairchild v. Intra-Op Monitoring Servs. of Md., Inc.*, 2005 WL 8155631, at *2 (M.D. La. Oct. 21, 2005) (quoting *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995)); *see also Tex. Disposal Sys., Inc.*, 2019 WL 13550966, at *2 ("[A] waiver of privilege is a serious sanction reserved for cases of unjustified delay, inexcusable conduct, bad faith, or other flagrant violations."); *Enron Corp. Sav. Plan*, 258 F.R.D. at 158 (declining to waive objections because no evidence that defendant acted in "egregious bad faith" or that plaintiffs were "gravely prejudiced").

Ventra's conduct in this case does not appear to be the type of unjustified delay, bad

faith, or egregious and inexcusable conduct that warrants waiver of the attorney-client privilege. Ventra explains in its response that, after it missed the June 29, 2025 deadline, the parties "were in discussion about a possible settlement offer and another discovery extension." D. Resp. (ECF No. 43) at 2. When "nothing came to fruition," and plaintiffs filed their motion to compel, Ventra immediately served its objections and responses and produced 1,487 pages of documents. *Id.* Ventra obtained new counsel on August 29, 2025, and it contends that its current counsel "has been working diligently to get up to speed with the complex issues in this case and comply with [Ventra]'s duty to produce responsive information." *Id.* To date, Ventra has produced 5,235 pages of responsive documents. It also informed plaintiffs on September 29, 2025 that it would be producing a privilege log, which it did on October 7, 2025. Although Ventra's justification for its long delay in responding to plaintiffs' Discovery Requests is somewhat unconvincing, particularly for the period of time when Ventra was represented by previous counsel, there is no evidence that would suggest that its delay was the result of bad faith, the intentional violation of a court order, or other inexcusable conduct. Moreover, plaintiffs have not shown that they have been prejudiced by the delay, other than by having to file the instant motion, for which the court is awarding attorney's fees. *See infra* § VII.

Accordingly, because it does not appear that Ventra acted in "egregious bad faith" or that plaintiffs were "gravely prejudiced" by the delay in production, the court in its discretion declines to impose the serious sanction of denying or waiving Ventra's privilege-based objections that were not timely asserted. *Enron Corp. Sav. Plan*, 258 F.R.D. at 158 (noting

the "harshness of a finding of waiver based solely on untimeliness (about three months)" and declining to impose sanction of waiver of privilege); *see also, e.g.*, *Baker v. Walters*, 652 F.Supp.3d 768, 777 (N.D. Tex. 2023) (Horan, J.) (finding that 29-day delay in serving objections did not waive defendants' right to withhold privileged or work product documents as outside the scope of permissible discovery under Rule 26(b)(1)).

D

Ventra provided plaintiffs its privilege log on October 7, 2025. In their final reply, plaintiffs contend that this privilege log is insufficiently detailed to preserve Ventra's privilege claims because it

> contains only generic, conclusory descriptions insufficient to assess the claimed privileges under Rule 26(b)(5) . . . . Several entries lack dates or lump multiple communications together, and it is unclear whether the log encompasses all documents for which privilege was asserted in Ventra's objections, or only a subset of materials reviewed and withheld to date.

Ps. Final Reply (ECF No. 50) at 3 n.3.

Under Rule 26(b)(5), a party asserting a claim of privilege as to otherwise discoverable information must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Blanket assertions of privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *United States v. Davis*, 636 F.2d 1028, 1044

n.20 (5th Cir. Feb. 1981)). Assertions of privilege as to otherwise discoverable information must be supported by a privilege log "sufficient to establish each element of the claimed privilege." *United States v. Louisiana*, 2015 WL 4619561, at *2 (M.D. La. July 31, 2015); *see also Serv. Lloyds Ins. Co. v. N. Am. Risk Srvcs, Inc.*, 2021 WL 148054, at *2 (W.D. Tex. Jan. 15, 2021) ("[C]ompliance is generally accomplished with a privilege log that identifies the documents by date, names of the author or authors and recipient or recipients, and generally describes the subject matter."); *Hernandez v. Frazier*, 2012 WL 12895537, at *5 (W.D. Tex. May 11, 2012) ("[T]he privilege log should generally include a document number[,] author or source, recipient, persons receiving copies, date, document title, document type, number of pages, and any other relevant nonprivileged information.").

The court has reviewed Ventra's privilege log, which plaintiffs attach to their final reply, and concludes with respect to the entries that plaintiffs have specifically identified[3] that the limited information Ventra has provided is insufficient to establish whether the

---

[3]Plaintiffs specifically object to Ventra's privilege log as follows:

> For example, one entry simply states "Internal memorandum prepared by Lane Cates and Amy Turner" and others simply note that attorneys are included on the email chain. Several entries lack dates or lump multiple communications together, and it is unclear whether the log encompasses all documents for which privilege was asserted in Ventra's objections, or only a subset of materials reviewed and withheld to date.

Ps. Final Reply (ECF No. 50) at 3 n.3 (citations omitted).

communications at issue were made for the purpose of seeking legal advice (and thus protected by the attorney-client privilege) or were prepared in anticipation of litigation or for trial (and thus protected under the work product doctrine). *See* Ps. Final Reply (ECF No. 50-1) at Ex. A. Accordingly, the court orders Ventra to produce an amended privilege log with sufficient detail to support its claims of attorney-client privilege and work product for each withheld document. If plaintiffs continue to contest any designation on the amended log, they may seek relief by motion, after making diligent efforts to resolve any disputes by agreement.

IV

Plaintiffs move to compel information withheld as privileged in response to Interrogatories 3, 12, and 13.

A

In Interrogatory 3, plaintiffs request that Ventra identify and provide contact information for "every person that [it] or [its] attorneys have interviewed or contacted regarding the facts alleged and/or claims asserted in the Complaint and . . . Answer, or regarding this suit and/or dispute generally." Ps. Mot. (ECF No. 40-1) at Ex. A. Ventra objects on the ground that this request seeks information that is protected by the attorney-client privilege and work product doctrine. It contends that it has already identified persons with knowledge relevant to the facts in response to Interrogatory 2,[4] and posits that, during

---

[4]Interrogatory 2 requests that Ventra "[i]dentify each person who has knowledge of or information concerning any of the facts alleged in the Complaint and your Answer, for

this early stage of discovery, it "should not be required to disclose its current litigation strategy as to who it may call at trial or who it may have retained and plan to call as an expert." D. Surreply (ECF No. 49) at 6. The court agrees.

The identities of persons who know of relevant facts "are normally found to be either outside of the work product doctrine or 'containing minimal work product content.'" *In re Hardwood P-G, Inc.*, 403 B.R. 445, 470 (Bankr. W.D. Tex. 2009) (citation omitted). In contrast, a request "does tend to reveal work product" if it asks a party to identify "all persons that [the party] interviewed during the course of their investigation." *Id.* at 471 (citations omitted). Whereas the former type of interrogatory discloses only underlying facts, the latter type reveals

> the potential for significant insights into the . . . lawyers' preparation of their case (and thus their mental processes). . . . [T]he disclosure of all persons interviewed, when coupled with the . . . inevitable disclosure of which of them were anticipated witnesses (and therefore which were not), would teach the opponent just which interviewees' information was viewed as gold and which as dross. It would teach the shape of the discovered party's case as surely as the shape of a container teaches the shape of the gas within.

*Id.* (quoting *Am. Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n*, 107 F.R.D. 258, 261 (N.D. Ill. 1985)).

In its answer to Interrogatory 2, Ventra identified all individuals with knowledge of

---

each person identified, state the facts of which that person has knowledge or information." Ps. Mot. (ECF No. 40-1) at Ex. A.

the issues in the underlying suit. Requiring it to also reveal the identities of individuals its attorneys have interviewed would present too great a risk of informing plaintiffs about Ventra's counsel's litigation strategy. Accordingly, the court denies plaintiffs' motion to compel responses to Interrogatory 3.

B

Interrogatories 12 and 13 ask Ventra to identify each hospital medicine client whose claims were and were not affected by the coding changes that occurred on September 1, 2023. Ventra objects, contending that the information plaintiffs seek—i.e., the identity of all of Ventra's clients—is protected by the trade secret privilege.

1

Because the court is exercising diversity jurisdiction, Texas law governs Ventra's assertion of the trade secret privilege. *See* Fed. R. Evid. 501. Under Texas Rule of Evidence 507, "[a] person has a privilege to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, unless the court finds that nondisclosure will tend to conceal fraud or otherwise work injustice." Tex. R. Evid. 507(a). The Supreme Court of Texas has established the following burden-shifting framework for analyzing claims of trade secret privilege under Rule 507:

> First, the party resisting discovery must establish that the information is a trade secret. The burden then shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claims. If the requesting party meets this burden, the trial court should ordinarily compel disclosure of the information, subject to an appropriate protective order. In each circumstance, the trial court must weigh the degree of the

> requesting party's need for the information with the potential harm of disclosure to the resisting party.

*In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 613 (Tex. 1998) (footnote omitted).

2

The court first considers whether Ventra has met its burden to establish that the requested information is a trade secret. A "trade secret is information which derives independent economic value from being not generally known or readily ascertainable through proper means." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022). Texas courts weigh six factors to determine the existence of a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 492 (5th Cir. 2016) (quoting *In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009)). "The party claiming a trade secret is not required to satisfy all six factors." *In re 4X Indus., LLC*, 639 S.W.3d 801, 808 (Tex. App. 2021) (citing *In re Bass*, 113 S.W.3d 735, 740 (Tex. 2003). "Customer lists, pricing information, client information, customer preferences, buyer contacts . . . have all been recognized as trade secrets." *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 424 (Tex. App. 2007, no pet.).

In its surreply, Ventra cites the declaration of Lane Cates ("Cates"), its Chief Legal

and Compliance Officer, in which Cates avers that Ventra's client list ("List")

> is a compilation of information used in Ventra's business in order to gain a competitive advantage over Ventra's competitors. The List is stored in a password-protected, secured database with limited access. Not every employee is allowed access to Ventra's List, and those with access to the List must have a valid business reason for accessing the information and must execute a confidentiality agreement requiring them to keep the information contained in the List confidential. Further, Ventra does not share the information publicly or through marketing materials.

D. Surreply (ECF No. 49-2) at Ex. B. The court concludes, based on Cates' declaration and the absence of any evidence to the contrary, that Ventra's client list a trade secret entitled to protection under Tex. R. Evid. 507(a). Ventra has satisfied at least factors 1, 2, 3, and 6, and as the party claiming a trade secret, it is not required to satisfy all six factors.

3

The burden now shifts to plaintiffs to establish that the information they seek in Interrogatories 12 and 13 is necessary for a fair adjudication of their claims. Plaintiffs maintain in their final reply that the identities of clients whose hospital medicine claims were or were not affected by defendants' coding changes are relevant. This is so, according to plaintiffs, because they have alleged that defendants unilaterally altered their coding methodology in a way that significantly reduced revenue after they terminated their arrangement with Ventra and "[k]nowing which of Ventra's clients, or former clients like Plaintiffs, were subject to those changes—and which were not—is essential to proving both the existence and scope of those alterations, establishing causation, motive and quantifying

damages." Ps. Final Reply (ECF No. 50) at 8. Plaintiffs also contend that the "comparative information" they seek is "indispensable to determining whether Defendants selectively applied different coding rules to certain entities, inconsistently implemented their coding philosophy, or treated similarly situated hospitalist groups differently." *Id.* at 8-9.

The court is not persuaded that the information plaintiffs seek is necessary to a fair adjudication of their claims. "Whether the requested information is necessary to a fair adjudication of a party's claims depends on the nature of the information and the context of the case." *In re C-Automation, Inc.*, 698 S.W.3d 87, 98 (Tex. App. 2024, no pet.) (citing *4X Indus., LLC*, 639 S.W.3d at 810). "This showing requires more than general assertions of unfairness or merely that the information is relevant." *Id.* (citing *4X Indus., LLC*, 639 S.W.3d at 810). Plaintiffs, as the parties seeking production of the trade secrets, "must make a 'particularized showing' that the information is necessary to prove one or more material elements of [their] claim and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit." *Id.* (citation omitted). The party seeking trade secret information "cannot merely assert unfairness but must demonstrate with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 733 (Tex. 2003). "This is a 'heightened burden,' and requires the requesting party to present evidence." *In re C-Automation, Inc.*, 698 S.W.3d at 98-99 (citing *4X Indus., LLC*, 639 S.W.3d at 810).

In this lawsuit, plaintiffs are pursuing claims for breach of contract, breach of

warranty, negligence, and negligent misrepresentation. These claims arise out of the services that Ventra and Gottlieb contractually agreed to provide to the Physician Groups and their allegedly improper coding of hospital medicine visits with respect to these Physician Groups. Plaintiffs have not adequately explained why the "comparative information" they seek regarding Ventra's other clients is relevant to any of their claims. Accordingly, because plaintiffs have not established that the protected information is necessary for a fair adjudication, the court denies their motion to compel responses to Interrogatories 12 and 13.

V

A

Plaintiffs move to compel responses to Interrogatories 6 and 7, contending that Ventra's responses provide only conclusory statements and fail to describe Ventra's actual internal coding philosophy, protocols, or requirements either before or after the 2023 changes and omit detail about what specific modifications were made.

Interrogatory 6 requests that Ventra "[e]xplain in detail Ventra/Gottlieb's coding philosophy, protocols, guidelines or requirements for coding hospital medicine claims prior to the January 1, 2023 implementation of new hospital medicine coding guidelines published by the American Medical Association." D. Resp. (ECF No. 43-1) at Ex. A. Interrogatory 7 asks Ventra to "[e]xplain in detail Ventra/Gottlieb's change in coding philosophy, protocols, guidelines or requirements for coding hospital medicine claims in anticipation of the January 1, 2023 implementation of new hospital medicine coding guidelines published by the American Medical Association." *Id.* In its answer to Interrogatory 6, Ventra states

- 16 -

that "[p]rior to January 1 2023 Defendant followed then-current CPT Evaluation-and-Management (E/M) guidelines and applicable payer rules when coding hospital-medicine services." *Id.* In answer to Interrogatory 7 Ventra states:

> Defendant started reviewing the published AMA guidelines for January 1, 2023, when they were released on July 1, 2022. Additionally, Defendant reviewed the CMS final rule released in November of 2022. Starting January 1, 2023, Defendant implemented the AMA and CMS published guidelines for coding.

*Id.*

B

Plaintiffs contend that Ventra's responses are "vague or incomplete" because they "fail to describe Ventra's actual internal coding philosophy, protocols, or requirements either before or after the 2023 changes, and they omit any detail about what specific modifications were made." Ps. Reply (ECF No. 45) at 7; *see also* Ps. Final Reply (ECF No. 50) at 10 ("The requests squarely seek Defendants' actual *internal* coding rationale and practices—not a conclusory statement that they 'follow' public guidance."). Ventra maintains in its surreply that its answers identify the changes that occurred in its coding practices before and after January 1, 2023 and that plaintiffs' Interrogatories do not specifically ask for Ventra's "actual internal coding philosophy, protocols, or requirements," as they are now seeking to compel. D. Surreply (ECF No. 49) at 8.

The court agrees with Ventra's position. Interrogatories 6 and 7 ask Ventra to explain its "coding philosophy, protocols, guidelines, *or* requirements" (emphasis added) before and after the 2023 changes. Ventra's responses, which identify the guidelines that it followed,

sufficiently answer the Interrogatories, as written. Accordingly, the court denies plaintiffs' motion to compel responses to Interrogatories 6 and 7.[5]

VI

Plaintiffs request a court-ordered deadline for Ventra to complete all outstanding discovery. They contend that Ventra has not provided any date certain for completion, and that, without a firm deadline, they remain unable to determine when production will be complete, take party depositions, and prepare the case for trial. Ventra responds that it

> is certainly not arguing that they are entitled to an unbounded, "endless window" for document production. On October 7, 2025, Defendants produced their Supplemental Production including documents Bates Labeled "Ventra 002334-Ventra 005235," along with their Privilege Log. Defendants deny that they are failing to satisfy their obligations under Rule 34.

D. Surreply (ECF No. 49) at 8.

Although Ventra denies that it is failing to satisfy its obligations under Rule 34, it does not contend that its production is complete. Nor does Ventra appear to oppose plaintiffs' request for a court-ordered deadline or request additional time in which to comply with its discovery obligations. The court therefore orders Ventra to complete its document production and to produce an amended privilege log, as ordered above, no later than 30 days from the date this memorandum opinion and order is filed.

---

[5]To the extent plaintiffs require more detail regarding Ventra's internal coding rationale and practices, they may attempt to seek this information through a different means of discovery, such as, for example, by deposing Ventra's corporate representative.

VII

Plaintiffs move for an award of attorney's fees incurred in preparing the motion to compel. Under Rule 37(a)(5)(A), if a motion to compel

> is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

Because Ventra did not respond to plaintiffs' Discovery Requests until after they filed the instant motion to compel, and because the court has determined that none of the exceptions listed in Rule 37(a)(5)(A) applies in this case, the court grants plaintiffs their reasonable expenses, including attorney's fees, associated with this motion to compel.

Within 28 days, the parties must meet and confer and attempt to agree on the amount of reasonable attorney's fees to be awarded to plaintiffs. If the parties cannot reach agreement, plaintiffs may file a motion for such reasonable attorney's fees and costs and for the additional expenses and attorney's fees that they have incurred in seeking the fee award.

* * *

Accordingly, for the reasons explained, the court grants in part and denies in part plaintiffs' motion to compel; grants plaintiffs' request for attorney's fees; and orders Ventra to file an amended privilege log and fully respond to plaintiffs' Discovery Requests within 30 days from the date this memorandum opinion and order is filed.

**SO ORDERED**.

December 10, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE