IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

OKLAHOMA HOSPITAL MEDICINE §
PHYSICIANS, LLC, et al., §
　 §
　　　　　　　　Plaintiffs, §
　 §　　Civil Action No. 3:24-CV-2492-D
VS. §
　 §
GOTTLIEB LLC, et al., §
　 §
　　　　　　　　Defendants. §

MEMORANDUM OPINION
AND ORDER

In this removed diversity action, defendant Ventra Health, Inc. ("Ventra") moves to compel discovery from plaintiffs[1]; defendants Ventra and Gottlieb, LLC ("Gottlieb") move to quash plaintiffs' subpoenas to non-parties OMH-Healthedge Holdings, Inc. ("OMH") and Global Healthcare Resource, LLC ("Global"); and plaintiffs move to reopen discovery. For the reasons that follow, the court grants Ventra's motion to compel in part and in part orders the parties to meet and confer; grants plaintiffs' motion to reopen discovery; and denies defendants' motion to quash.

---

[1]Plaintiffs are Oklahoma Hospital Medicine Physicians, LLC; Oklahoma Infectious Disease Specialists, LLC; Tulsa Hospital Medicine Physicians Group, LLC; SC Hospital Medicine Physicians, LLC; Columbiana Emergency Physicians, LLC; Eastern Kansas Emergency Physicians, LLC; Green Valley Emergency Physicians, LLC; Green Valley Hospital Medicine Physicians, LLC; Jackson Emergency Physicians, LLC; Monroe Emergency Physicians, LLC; Oklahoma Emergency Physicians, LLC; and Post Acute Physicians, LLC.

I

This diversity action arises out of the alleged failure of Gottlieb and Ventra (Gottlieb's successor in interest) to perform under several Billing Services Agreements and a Billing Services Termination Agreement by, *inter alia*, unilaterally implementing a new, and incorrect, coding protocol for hospital medicine visits, which resulted in a dramatic loss of revenue for the plaintiff physician groups. Ventra moves to compel plaintiffs to respond to interrogatories to which they objected and produce documents that they withheld; Ventra and Gottlieb together move to quash plaintiffs' subpoenas to non-parties OMH and Global; and plaintiffs move to reopen discovery. All three motions are opposed and are being decided on the briefs, without oral argument.

II

The court begins with Ventra's motion to compel.

A

Under Fed. R. Civ. P. 26(b)(1), "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." And, under Rule 37(a)(3)(B), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when the party from whom discovery is sought fails to produce requested documents or respond to an interrogatory or request for admission. The burden is on the party resisting discovery—here, plaintiffs—to establish why the motion to compel should not be granted. *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)

- 2 -

(Ramirez, J.); *see also Lozano v. Dorel Juv. Grp.*, 2010 WL 11619687, at *1 (N.D. Tex. May 26, 2010) (Means, J.) ("Generally, the burden is on the party seeking to avoid compliance with a discovery request to show that the request is improper[,]" such that "in the context of a motion to compel, the party who opposes discovery must 'show specifically how [the request] is not relevant or how [the request] is overly broad, burdensome, or oppressive.'" (second and third alterations in original) (quoting *McLeod, Alexander, Powell and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990))).

B

Ventra moves to compel a response to Interrogatory No. 1.

1

Interrogatory No. 1 asks plaintiffs to "[i]dentify all Claims Plaintiffs assert were incorrectly coded and/or billed by Defendants, including the date of service, hospital account number, invoice number, location, treating provider, originally assigned CPT Code, and the CPT Code Plaintiffs assert should have been used."  D. App. (ECF No. 60) at 54-55. Plaintiffs object to Interrogatory No. 1 on various grounds,[2] including that it is overly broad and unduly burdensome and seeks information equally or more readily available to

---

[2]In deciding defendants' motion to compel, the court considers only the objections plaintiffs make in response to the motion.  *Cf. Baranowski v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 141 F.R.D. 55, 56 (N.D. Tex. 1992) (Fitzwater, J.) ("[A]lthough National Union's objections may, without more, be sufficient to avoid waiving error as to the form of the deposition questions in issue, the objections do not give rise to a right to a hearing or to quash.").

defendants.  Despite these objections, plaintiffs respond that they "will provide a report identifying the facilities at issue, the time period at issue, the codes involved, and the monetary damages associated with each facility, based on their current knowledge and the information presently available to them," and that they will supplement their response "as discovery and expert analysis continue." *Id.* at 56.

Ventra moves to compel a response to Interrogatory No. 1, contending, *inter alia*, that plaintiffs' objections are unfounded; that the interrogatory "seeks information that goes to the *heart* of this action—the identity of the Miscoded Claims and the bases for Plaintiffs' claim that they were miscoded," D. Br. (ECF No. 59) at 5; that defendants cannot prepare a defense without the requested information; and, regarding the answer that plaintiffs *did* provide, the response is insufficient because plaintiffs have deferred responding and, in any event, the promised report is not responsive and has not been produced.

Plaintiffs respond that they have fully answered Interrogatory No. 1 by providing defendants with a detailed report ("Report"), which they attach as an exhibit to their response, that identifies the 15 specific facilities at issue, the time period at issue, the four CPT codes involved, the number of claims at issue for the time period (by facility and by CPT code), the asserted error rate associated with the CPT codes assigned by defendants' coders, and the specific monetary damages caused by defendants' conduct.

2

The court finds that plaintiffs' Report is not responsive.  Interrogatory No. 1 asks for a list of *all claims*, along with other identifying information, that plaintiffs maintain were

incorrectly coded. Plaintiffs' Report does not identify even a single claim that plaintiffs contend was incorrectly coded; it instead identifies, for the relevant time period, the estimated number of visits and percentage of improperly coded claims in each of two CPT code categories ("Estimated 99222 + 99223 Visits" and "Estimated 99232 + 99233 Visits"). The Report does not provide the information Interrogatory No. 1 requests, and does not enable defendants to discern which, if any, of plaintiffs' hospital medicine visit claims were allegedly coded incorrectly.

3

Plaintiffs object to Interrogatory No. 1 on the grounds that it is overbroad and unduly burdensome and seeks information that is "equally or more readily available to defendants." They maintain that defendants "have in their possession all of the data and other information necessary to identify the claims at issue in this case." Ps. Br. (ECF No. 65) at 8. The court overrules these objections.

Even if Ventra were able to determine, based on the claims data already in its possession, which of plaintiffs' hospital medicine visit claims were allegedly improperly coded, Ventra "was entitled to have [plaintiffs] provide such information through an interrogatory answer signed under oath." *Sweeney v. UNLV Rsch. Found.*, 2010 WL 1756875, at *3 (D. Nev. Apr. 30, 2010). This is because defendants have a right to know which of the tens of thousands of hospital medicine visit claims *plaintiffs* believe were incorrectly coded, particularly given that defendants deny that they were. *See, e.g.*, Am. Compl. ¶ 83 (alleging that Ventra breached its contractual duty "by applying the incorrect

- 5 -

codes to subsequent hospital visits"); Ans. ¶ 83 (denying allegations in ¶ 83). The information Ventra seeks in Interrogatory No. 1 is "basic information that Defendants need to defend themselves—the identity of the miscoded claims and the bases for Plaintiffs' assertion that they were miscoded." D. Br. (ECF No. 59) at 6. Plaintiffs cannot shift to defendants the burden of determining whether, and to what extent, plaintiffs' hospital medicine visit claims were incorrectly coded merely because defendants are also in possession of their claims data.

Nor have plaintiffs met their burden to establish that Interrogatory No. 1 is overbroad or unduly burdensome. A party opposing discovery on the basis that it is unduly burdensome "bears the burden of showing why discovery should be denied." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (Ramirez, J.) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). "In order to satisfy its burden, the objecting party must make a specific, detailed showing of how a request is burdensome." *Id*. (citation omitted). "A mere statement by a party that a request is 'overly broad and unduly burdensome' is not adequate to voice a successful objection." *United States v. Umbrella Fin. Servs., LLC*, 2024 WL 117153, at *1 (N.D. Tex. Jan. 10, 2024) (Fitzwater, J.) (quoting *Brady*, 238 F.R.D. at 437). "[A] party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Id*. (quoting *Brady*, 238 F.R.D. at 437). In their opposition response, plaintiffs state that they have "continued to rightfully object on overbreadth and burdensomeness." Ps. Br. (ECF No. 65) at 8. But they do not provide any explanation, much less evidentiary support, that would

- 6 -

establish that it would be unduly burdensome to produce the requested information.

### 4

The court conditionally grants Ventra's motion to compel with respect to Interrogatory No. 1. Later in this memorandum opinion and order, the court orders the parties to meet and confer with respect to the production of claims data. *See infra* § III(A)(3). If the parties are able to reach an agreement regarding the production of a mutually agreeable sample of claims, plaintiffs need only respond to Interrogatory No. 1 with respect to the claims included in the sample. Accordingly, although the parties must meet and confer within 28 days of the date this memorandum opinion and order is filed, if they reach agreement, plaintiffs must respond to Interrogatory No. 1 in accordance with that agreement within 42 days of the date this memorandum opinion and order is filed.

### C

The court next turns to Ventra's motion to compel responses to Interrogatories Nos. 2 and 3.

### 1

Interrogatory No. 2 asks plaintiffs to "[i]dentify all Claims for which Plaintiffs submitted a corrected bill or claim document to the managed care organization insuring the patient in an effort to address what Plaintiffs assert was a coding or billing error by Defendants." D. App. (ECF No. 60) at 56. In their answer, plaintiffs assert various objections, but state that they "will provide a report reflecting a substantive response to this Interrogatory, based on their current knowledge and the information presently available to

them." *Id.* at 57.  Interrogatory No. 3 asks plaintiffs to describe their "current process for coding and/or billing hospital medicine claims." *Id.*  Plaintiffs object based on overbreadth, undue burden, proportionality, relevance, and prematurity, and on the grounds that it is "impossible to appropriately limit [their response] in scope," and that the request "seeks confidential and propriety business information concerning internal workflows, compliance systems, and billing software not at issue in this case." *Id.* at 58.

Ventra contends that plaintiffs have not produced the promised report with respect to Interrogatory No. 2[3] and that plaintiffs' objections to Interrogatory No. 3 are unfounded because "the manner in which Plaintiffs currently code[ hospital medicine visits] might lead to the discovery of admissible evidence, particularly if they are being coded in the same or similar manner as Defendants did during the relevant period." D. Br. (ECF No. 59) at 10-11.

Plaintiffs have not specifically responded to defendants' motion to compel with respect to Interrogatories Nos. 2 and 3.  They instead contend that the court should deny Ventra's motion in its entirety because defendants have not complied with the meet-and-confer requirements of Rule 37(a)(1) and this court's local rules.

2

"[A] proper Rule 37(a) motion to compel . . . must include a certification that the movant has made a good faith effort to meet and confer regarding the specific discovery disputes at issue, and to resolve them without court intervention, as required by Federal Rule

---

[3]It is unclear in the record whether plaintiffs ever produced this report.

of Civil Procedure 37(a)(1) and Northern District of Texas Local Civil Rule 7.1." *Samsung Elecs. Am. Inc. v. Chung*, 325 F.R.D. 578, 594 (N.D. Tex. 2017) (Horan, J.) (internal quotation marks omitted); *accord* Rule 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."). "When a motion to compel addresses a number of matters, a good faith effort to confer typically requires that the parties discuss *each matter* in good faith to comply with conference requirements." *Brown v. Bridges*, 2015 WL 11121361, at *4 (N.D. Tex. Jan. 30, 2015) (Solis, C.J.) (emphasis added) (citing *Anzures v. Prologis Tex. I LLC*, 300 F.R.D. 314, 316 (W.D. Tex. 2012)); *see also Tijerino v. Spotify USA Inc.*, 2025 WL 1866057, at *7 (E.D. La. July 7, 2025) ("The failure to engage in a fulsome meet and confer on *each* disputed response, including the requests for admission, prior to filing the discovery motion constitutes sufficient reason in itself to deny the motion." (footnote omitted)).

Defendants do not dispute that they never meaningfully conferred with plaintiffs with respect to Interrogatories Nos. 2 or 3.  In fact, it appears that the first time defendants ever raised an issue with respect to these interrogatories was on April 6, 2026 (two days before they filed their motion), when they sent plaintiffs a copy of the motion, stating that they would file it unless plaintiffs removed their objections and produced the responsive information.  Nevertheless, the court concludes in this case that "further delay in addressing the motions to compel would not comport with the overriding principle set forth in Fed. R. Civ. P. 1 that the courts construe and administer the Federal Rules of Civil Procedure 'to

- 9 -

secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 288 (N.D. Tex. 2017) (Horan, J.) (quoting *Brown*, 2015 WL 11121361, at *5); *see also Brown*, 2015 WL 11121361, at *5 ("A failure to satisfy conference requirements does not, however, mandate summary denial of their motions because the Court retains discretion to 'waive strict compliance with the conference requirements' and to consider the motions on their merits." (citation omitted)). Under the parties' Agreed Amended Scheduling Order ("Amended Scheduling Order"), which the court entered on January 20, 2026, discovery was to be completed by April 24, 2026. Plaintiffs have given no indication that they have produced the report that they promised in response to Interrogatory No. 2. Nor do they explain how a conference with respect to Interrogatories Nos. 2 or 3 would result in resolving or even narrowing the disputed issues. Under these circumstances, the court declines to deny Ventra's motion with respect to Interrogatories Nos. 2 or 3 based on its failure to meet and confer with plaintiffs.[4]

3

Because plaintiffs have provided no substantive response to defendants' motion to compel responses to Interrogatories Nos. 2 and 3, they have not met their burden to establish that the motion should not be granted. *Merrill*, 227 F.R.D. at 470. Nor is the court otherwise

---

[4]This conclusion is not inconsistent with the court's order that the parties meet and confer with respect to the claims data because plaintiffs specifically requested a meet and confer regarding these data, and there seems to be a good reason to meet and confer regarding the claims data: to see whether the parties can agree to a mutually agreeable sample of claims.

persuaded that these discovery requests, which seek relevant information, are overbroad, unduly burdensome, premature, or otherwise improper. Accordingly, the court overrules plaintiffs' objections and grants Ventra's motion to compel responses to Interrogatories Nos. 2 and 3. Plaintiffs must answer these interrogatories no later than 28 days after this memorandum opinion and order is filed.

D

Ventra moves to compel plaintiffs to respond to Interrogatories Nos. 4 and 5.

1

Interrogatory No. 4 asks plaintiffs to "[d]escribe in detail the factual basis for Plaintiffs' allegation that the change in coding by Defendants was improper or inconsistent with applicable CMS or CPT guidelines in effect at the time." D. App. (ECF No. 60) at 59. After making various objections, plaintiffs respond:

> based on the limited information presently available, they understand that Defendants unilaterally altered the coding methodology for hospital medicine services, resulting in systematic and improper down-coding and reduced reimbursement inconsistent with provider documentation and prevailing CMS and CPT guidance. Plaintiffs will supplement this response as discovery and expert analysis continue.

*Id.* at 59-60.

Ventra contends in its motion that plaintiffs' subject-to-objection answer to Interrogatory No. 4 is non-responsive because it fails to identify the *specific* CMS or CPT guidelines that defendants allegedly interpreted incorrectly or explain why defendants' interpretation was incorrect. The court disagrees that plaintiffs' answer is not responsive.

- 11 -

Plaintiffs have provided Ventra the information that Interrogatory No. 4 seeks by explaining

why they allege that the change in coding was improper—i.e., because it was inconsistent

with applicable CMS or CPT guidelines.  Interrogatory No. 4 does not ask plaintiffs to

identify the specific guidelines they maintain Ventra interpreted incorrectly.  And because

Interrogatory No. 4 is phrased in the disjunctive, plaintiffs were permitted to answer why

"the change in coding by Defendants was improper" *or* why the change in coding was

"inconsistent with applicable CMS or CPT guidelines in effect at the time."  Plaintiffs'

response is sufficient with respect to the former.  *See, e.g.*, *Johnson v. Kraft Foods N. Am.,*

*Inc.*, 236 F.R.D. 535, 543 (D. Kan. 2006) (plaintiff adequately answered interrogatories

seeking information about "various positions, sales accounts, *or* sales routes" by providing

only job positions because interrogatories sought information in the disjunctive).  The court

therefore denies defendants' motion to compel a response to Interrogatory No. 4.

2

Interrogatory No. 5 asks plaintiffs to "[d]escribe all steps Plaintiffs took to mitigate

or offset the alleged financial losses described in the Amended Complaint, including any

billing corrections, third party audits, or alternative revenue recovery actions." D. App. (ECF

No. 60) at 60.  Plaintiffs make various objections and respond in pertinent part as follows:

> Plaintiffs state that they have taken reasonable steps to evaluate
> and address the revenue impact of Defendants' unilateral coding
> changes and failure to perform other contractual obligations to
> Plaintiffs, including engaging a third-party billing service to
> review its account receivables.  However, Plaintiffs cannot fully
> identify or describe all mitigation efforts until Ventra identifies
> the specific coding edits, affected claims, and other information

- 12 -

> necessary to allow Plaintiffs to fully quantify its losses. Plaintiffs will supplement this response as discovery and expert analysis continue.

*Id.* at 61.

Ventra maintains that, to the extent plaintiffs have failed to identify *each* mitigating step or action they have taken, their answer is evasive and incomplete. The court agrees. If engaging a third-party billing service to review account receivables is the *only* step that plaintiffs have taken to mitigate or offset their financial losses, plaintiffs' response to Interrogatory No. 5 would appear to be sufficient. But because plaintiffs state that they have taken "reasonable steps . . . *including* engaging a third-party billing service," it is unclear whether plaintiffs have taken additional steps to mitigate or offset their losses. *Id.* (emphasis added). If they have, they must disclose this information to Ventra.[5] Accordingly, to the extent that plaintiffs have failed to disclose *all* the steps they have taken to mitigate or offset their losses, the court grants Ventra's motion to compel plaintiffs to provide this information.[6] Plaintiffs must answer this interrogatory no later than 28 days after this

---

[5]To the extent that plaintiffs contend they cannot fully respond to Interrogatory No. 5 because Ventra has not identified the specific coding edits, affected claims, and other information necessary to allow plaintiffs to fully quantify their losses, the court is unconvinced that any such failure would preclude plaintiffs from identifying steps *they have taken*—information that is clearly within their knowledge—to mitigate their losses.

[6]In their opposition response, plaintiffs contend that, to the extent Ventra objects to their factual narratives as "somehow incomplete or not detailed enough," Ventra has responded with similar responses to similar interrogatories propounded by plaintiffs and "cannot complain about the brevity of Plaintiffs' responses when they themselves have done the exact same thing." Ps. Br. (ECF No. 65) at 11. In other words, as quoted by plaintiffs, "what is 'good for the goose, [is] good for the gander." *Id.* at 11-12 (quoting *Stirling v.*

memorandum opinion and order is filed.

### III

The court now turns to the portion of Ventra's motion that seeks to compel responses to defendants' requests for production ("RFPs").

### A

#### 1

Ventra moves to compel plaintiffs to respond to RFP No. 1, which requests, for each "Claim,"[7] that plaintiffs produce, in PDF format, all documents sent to or received from defendants, medical records for each claim, documents sent to or received from a third party payor, payor appeal information for each claim and any payor response, and the payment received for each claim. Plaintiffs object to RFP No. 1 on the ground, *inter alia*, that the request is "overly broad, unduly burdensome, and disproportionate to the needs of the case because it would potentially require creation of hundreds of individual claim packets in static PDF format, including voluminous medical records and billing documents." D. App. (ECF

---

*Meridian Servs. Grp., LLC*, 2025 WL 510916, at *2 (M.D. Ga. Feb. 14, 2025)). The court disagrees with this reasoning. *Stirling* is not binding precedent in this district, and judges of this court have held that one party's failure to comply with its discovery obligations does not excuse the opposing party from compliance. *See, e.g.*, *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018) (Horan, J.) ("Neither may a party refuse to comply with an opposing party's discovery requests 'simply because he believes that the opposing parties ha[ve] not fully complied with his discovery requests to them.'" (alteration in original) (citation omitted)); *Quantas Healthcare Mgmt., LLC v. Sun City Emergency Room, LLC*, 2024 WL 1520568, at *3 (N.D. Tex. Apr. 8, 2024) (Horan, J.) (same).

[7]"Claim" is defined as "the hospital medicine claim(s) that Plaintiffs allege was incorrectly coded and/or billed by Defendants." D. App. (ECF No. 60) at 8.

No. 60) at 65.  Based on these objections, plaintiffs respond that they

> will not provide a substantive response as this time.  Plaintiffs will produce non-privileged, responsive documents in their possession as discovery continues and reveals sufficient information regarding Defendants' coding changes and the affected claims to enable Plaintiffs to respond.  Moreover, Plaintiffs have proposed to confer with Defendants, with counsel present, to discuss potential limitations to this request, including identifying a mutually agreeable sample of claims, and to otherwise discuss the best way in which to resolve the parties' claims data issues.

*Id.* at 66.

Ventra contends in its motion that plaintiffs have still not produced any documents responsive to RFP No. 1 and that the court should order them to produce all responsive documents within ten days.  Plaintiffs respond that, given the scope of information requested by RFP No. 1, the court should deny Ventra's motion and require the parties to complete the meet-and-confer process plaintiffs have proposed in order to come up with a reasonable alternative to the production of the tens of thousands of individual claim packets that RFP No. 1 requests.

2

As explained above, Rule 37(a)(1) provides that a motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  The "conference requirement is in place to require the parties to communicate and coordinate in good faith to attempt to resolve any nondispositive dispute without court

intervention." *Brown*, 2015 WL 11121361, at *2. "The requirement is part and parcel of the ethical rules governing attorneys and the court rules governing all parties . . . that require all parties to engage in meaningful discussions in an attempt to resolve matters without court intervention." *Id.* (citing *Dondi Props. Corp. v. Com. Sav. &Loan Ass'n*, 121 F.R.D. 284, 289-90 (N.D. Tex. 1988) (en banc)).

Ventra does not dispute that it has not meaningfully conferred with plaintiffs regarding the production and analysis of plaintiffs' hospital medicine visit claims data, which defendants seek in Interrogatory No. 1 and RFP No. 1. In a February 17, 2026 letter to defendants, plaintiffs "propose[d] that the parties meet, with counsel present, to discuss the best way in which to resolve [the] claims data issues." D. App. (ECF No. 60) at 52. On March 12, 2026 plaintiffs again proposed, in their amended discovery responses "to confer with Defendants, with counsel present, to discuss potential limitations to this request, including identifying a mutually agreeable sample of claims, and to otherwise discuss the best way in which to resolve the parties' claims data issues." *Id.* at 66. Ventra did not respond to either request.

3

In their opposition response, plaintiffs contend that requiring them to compile and produce claim-level materials for each hospital medicine visit claim would impose an extraordinary and unnecessary burden, given that the universe of claims for the relevant time period amounts to 57,328 claims, with an estimated 30,122 miscoded individual claims. They propose that the parties meet and confer in order to identify a mutually agreeable

- 16 -

sample of claims from which to gather the requested information, contending that such a claims sampling process is routinely used in cases, such as this one, involving thousands of individual claims.  The court grants plaintiffs' request.

Courts routinely permit "the use of statistical sampling to determine whether there has been a pattern of overpayments [or underpayments] spanning a large number of claims where case-by-case review would be too costly." *Chaves Cnty. Home Health Serv., Inc. v. Sullivan*, 931 F.2d 914, 919 (D.C. Cir. 1991); *see also United States v. Lahey Clinic Hosp., Inc*., 399 F.3d 1, 18 n.19 (1st Cir. 2005) (The "sampling of similar claims and extrapolation from the sample is a recognized method of proof."); *United States v. Fadul*, 2013 WL 781614, at *14 (D. Md. Feb. 28, 2013) ("Courts have routinely endorsed sampling and extrapolation as a viable method of proving damages in cases involving Medicare and Medicaid overpayments where a claim-by-claim review is not practical.").

Plaintiffs have twice formally proposed that the parties meet and confer to discuss the possibility of using a mutually agreeable sample of claims from which to gather the requested information.  As far as the court can tell, Ventra has yet not engaged in any meaningful discussion with plaintiffs regarding this possibility.

Accordingly, the court directs the parties to meet and confer regarding the use of a mutually agreeable sample of claims to respond to RFP No. 1.  The meet and confer must occur no later than 28 days after this memorandum opinion and order is filed.  If the parties reach agreement, plaintiffs must comply with the agreement no later than 42 days after the date this memorandum opinion and order is filed.  If they cannot reach agreement, the parties

must file a joint status report that identifies what, if any, disputes remain with respect to RFP No. 1 and the reasons the disputes could not be resolved.

B

Ventra also moves to compel responses to RFP Nos. 5, 6, and 9.

1

RFP No. 5 requests "any standards, manuals, policies, or procedures upon which you intend to rely in this matter." D. App. (ECF No. 60) at 70. RFP No. 6 requests "any documents or legal authority supporting Plaintiffs' assertion that any Claim was coded incorrectly." *Id.* at 71.

In their response to Ventra's motion to compel, plaintiffs contend that, in response to RFP No. 5, they have produced the current AMA Evaluation and Management (E/M) Services Guidelines, and that, in response to RFP No. 6, they have produced an external third party audit report, reports for all 15 facilities at issue that reflected a massive decrease in revenue and Work RVUs for the time period at issue, and detailed correspondence between the parties that provided specific examples of defendants' coding errors. Ventra replies that, although plaintiffs have produced *some* responsive documents, it is clear that they have not produced *all* responsive documents because the referenced audit only relates to 159 of the estimated more than 30,000 improperly coded claims and the "*detailed* correspondence between the parties" consists of five bates-stamped pages. D. Reply. (ECF No. 66) at 9.

To the extent that plaintiffs possess documents responsive to RFP Nos. 5 or 6 and have not yet produced them, the court grants Ventra's motion to compel. Plaintiffs must

make the requested production no later than 28 days after this memorandum opinion and order is filed.

2

RFP No. 9 requests "all internal emails, memoranda, meeting minutes, or notes discussing Defendants' coding practices, policy changes, or the alleged revenue impact thereof." D. App. (ECF No. 60) at 74. Plaintiffs respond that they "will produce non-privileged communications discussing Defendants' coding practices and changes . . . and the resulting revenue impact." *Id.* at 75. In their opposition response, they contend that they will "continue to search for any responsive emails and communications and will produce any responsive documents that are found." Ps. Br. (ECF No. 65) at 16. This response, which "simply reiterates [plaintiffs'] ongoing duty to supplement under Rule 26(e), . . . is not an adequate response." *Source Network Sales & Mktg., LLC v. Jiangsu Mega Motor Co.*, 2017 WL 7596913, at *2 (N.D. Tex. May 15, 2017) (Toliver, J.) (citing cases); *see also Comcast Cable Commc'ns, LLC v. BT Ams., Inc.*, 2013 WL 12129283, at *1 (N.D. Tex. July 10, 2013) (Stickney, J.) ("Nor is Defendants' promise to continue to search for documents and supplement their responses an adequate response to Plaintiffs' proper discovery request.").

The court grants Ventra's motion to compel with respect to RFP No. 9. Plaintiffs must make the requested production no later than 28 days after this memorandum opinion and order is filed.

IV

For the reasons explained, the court grants in part and in part defers a ruling on Ventra's motion to compel. The court grants Ventra's motion to compel a response to Interrogatories Nos. 1, 2, 3, and 5 and to RFP Nos. 5, 6, and 9.

V

Ventra moves for an award of attorney's fees incurred in preparing the motion to compel. Under Rule 37(a)(5)(A), if a motion to compel

> is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>> (iii) other circumstances make an award of expenses unjust.

The court is today granting in part Ventra's motion to compel based on plaintiffs' failure to respond. But the court also finds that Ventra has failed to confer with plaintiffs regarding Interrogatories Nos. 2 and 3 and failed to respond to plaintiffs' good-faith offers to meet and confer regarding the voluminous hospital medicine visit claims data. Under these circumstances, the court concludes that the parties should each bear their own attorney's fees and costs.

- 20 -

VI

The court next considers together plaintiffs' motion to reopen discovery and defendants' motion to quash.

A

Plaintiffs filed this case on October 3, 2024. Under the initial scheduling order entered on March 6, 2025, the deadline to complete discovery was January 26, 2026. On April 30, 2025 plaintiffs served interrogatories and requests for production that, *inter alia*, sought communications and materials involving defendants' third-party coding vendors and subcontractors. When defendants failed to respond to several of plaintiffs' discovery requests, including their request for third-party vendor communications and related materials, plaintiffs on August 22, 2025 filed a motion to compel. Due to the filing of a surreply and final reply, briefing on the motion to compel was not completed until November 13, 2025. On December 10, 2025 the court entered a memorandum opinion and order that, *inter alia*, ordered Ventra to complete its document production within 30 days. *See Okla. Hosp. Med. Physicians, LLC v. Gottlieb LLC*, 2025 WL 3539162, at *8 (N.D. Tex. Dec. 10, 2025) (Fitzwater, J.).

On January 19, 2026 the parties filed an agreed motion for extension of time and continuance of current trial setting ("Agreed Motion") in which they stated that they had been in an ongoing discovery dispute dating back to defendants' previous counsel's representation of defendants and that

- 21 -

> [d]ue to the lengthy discovery dispute, the Parties were unable
> to proceed with scheduling depositions or otherwise proceed
> with litigating the case.  Consequently, the Parties believe that
> an extension of time is require to properly continue discovery
> and prepare this case for trial.

Agreed Motion (ECF No. 53) at 2.  The court granted the Agreed Motion and entered the Amended Scheduling Order, which set April 24, 2026 as the new discovery deadline.

According to plaintiffs, defendants never supplemented their production with third-party vendor communications and related materials.  In a March 13, 2026 letter, plaintiffs notified defendants that they had not received any written communications or documents reflecting oral communications between Ventra and/or vendors (including coding vendors), despite the fact that plaintiffs expressly requested these materials.  Defendants responded that they had searched for correspondence with the third-party vendors, that no responsive documents had been found, and that they were "currently investigating" whether they could obtain additional information regarding weekly meetings that were held to discuss "substantive issues with the third-party vendors, including the coding issues requested by Plaintiffs."  P. App. (ECF No. 69-2) at Ex. B.

Plaintiffs maintain that they have also been unable to schedule depositions.  They contend that they notified defendants in September 2025 that they intended to depose six individuals and proposed that the depositions begin in October 2025.  Due to the parties' ongoing discovery disputes, however, depositions were not scheduled at that time. In February 2026 plaintiffs attempted again to schedule depositions for late February or early March, but defendants responded that scheduling the depositions was dependent on

- 22 -

plaintiffs' response to their discovery letter and the production of a list of claims at issue.

On April 24, 2026, the date that discovery closed under the Amended Scheduling Order, plaintiffs served subpoenas for the production of documents on non-parties OMH and Global (the companies retained by Gottlieb to code medical claims, including plaintiffs' hospital medicine visit claims) "in an effort to secure needed factual discovery from other sources." Ps. Br (ECF No. 69) at 5. The also served their second set of discovery requests on Ventra, which consisted of ten interrogatories and ten RFPs. Defendants have filed a motion to quash the two non-party subpoenas on the ground that they are untimely under the Amended Scheduling Order. Plaintiffs oppose defendants' motion and separately move for a 45-day extension of the Amended Scheduling Order's discovery deadline so that they can complete depositions, receive responses to the third-party subpoenas, and conduct any related follow-up discovery.

B

Rule 16(b)(4) governs a party's request to modify a scheduling order. *Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *2 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.). "To modify the scheduling order, a party must demonstrate good cause and obtain the judge's consent." *Rodrigues v. US Bank Nat'l Ass'n*, 2021 WL 2077650, at *1 (N.D. Tex. May 24, 2021) (Fitzwater, J.). The good cause standard "require[s] the movant 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.*, 514 Fed. Appx. 483, 487-88 (5th Cir. 2013) (per curiam) (quoting *S & W Enters., LLC v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir.

- 23 -

2003)).

In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Squyres v. Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015) (alterations adopted). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

C

1

The court considers first plaintiffs' explanation for failing to timely comply with the Amended Scheduling Order.

Plaintiffs contend that they were unable to comply with the Amended Scheduling Order's discovery deadline because of the parties' ongoing discovery disputes, difficulties in scheduling depositions, and defendants' failure to fully respond to plaintiffs' discovery requests throughout the discovery period. They maintain that they have diligently pursued discovery throughout the case by repeatedly seeking defendants' communications with third-party vendors, repeatedly seeking deposition dates, and engaging in extensive meet-and-confer efforts and motion practice concerning deficiencies perceived by both parties; that defendants' pattern of delay and resistance to their discovery requests (including their failure

to either produce requested communications with third parties or confirm that they had no responsive documents), has frustrated their ability to move discovery forward; and that the claims-data issue, which is a core piece of the parties' discovery, remains unresolved, and, once it is resolved, the parties will be able to better identify the claims at issue, determine what coding changes were implemented, assess how those changes affected reimbursements, and otherwise complete the discovery process.

Defendants respond that plaintiffs have no good explanation for their failure to complete discovery by the extended discovery-completion date: they knew about the alleged importance of Ventra's coding subcontractor communications and documents from very early on in the litigation yet failed to notice the depositions of defendants' subcontractors; they waited over two months after Ventra's January 10, 2026 document production to ask why it did not contain the requested communications and documents of Ventra's coding subcontractors; and they waited over one month, and until the day discovery was to be completed, to serve OMH and Global with subpoenas; they failed to notice, much less take, a single deposition during the extended discovery period; and most of the discovery efforts they did undertake during the extended discovery period related to "Ventra's futile effort to get Plaintiffs to identify the Miscoded Claims and misinterpreted CMS guidelines as requested in Defendants' interrogatories and production requests, and not to discovery efforts by Plaintiffs," Ds. Br. (ECF No. 74) at 13.

In their reply, plaintiffs contend that defendants have mischaracterized their discovery efforts and that, viewed as whole, the record demonstrates continuous and good-faith efforts

to obtain the information necessary to prosecute this case while working cooperatively to resolve disputes without unnecessary court intervention:

> [d]uring the 88-day discovery extension, Plaintiffs successfully litigated a Motion for Attorneys' Fees in connection with their Motion to Compel, participated in formal and informal meet-and-confer efforts, responded to a deficiency letter, supplemented their own discovery responses without court intervention prepared for and sought dates for depositions, reviewed Defendants' productions, privilege logs, and supplements thereto, pursued continued deficiencies in Defendants' production, attempted to reconcile claims-level data, proposed a sampling approach, and responded to Defendants' own discovery motion.

Ps. Reply (ECF No. 79) at 4. In sum, plaintiffs contend that they actively and reasonably pursued discovery within the constraints they faced.

Plaintiffs' reasoning has superficial appeal. As defendants point out, plaintiffs' efforts with respect to the specific documents and depositions they required were to some degree minimal. So far as the court can tell, plaintiffs requested deposition dates in September 2025 and again on February 10, 2026, but never followed up on their requests; waited until March 13, 2026 to notify Ventra of the perceived deficiency in its production, have not moved to compel responses, and do not appear to have ever followed up on the issue; and offer no explanation for why they waited until the date discovery closed to serve OMH and Global with subpoenas. Nevertheless, it appears that at least part of the reason for plaintiffs' delay in noticing the depositions was a result of the ongoing discovery disputes in this case and an apparent impasse with respect to the production of claims data and the identification of the allegedly miscoded claims. *See* Ps. App. (ECF No. 69-3) at Ex. C (defendants' counsel

responding to plaintiffs' request for deposition dates, "we are not opposed to working on getting these witnesses scheduled, but this is also dependent on your response to our discovery letter.  At the very least, we need a list of the claims that are at issue in this case so that we can understand the issues and prepare our witnesses for deposition.").  And with respect to the third-party vendors, defendants had indicated as recently as March 20, 2026 that they were "currently investigating whether [they could] access and obtain additional information."  Ps. App. (ECF No. 69-2) at Ex. B.  Moreover, as plaintiffs explain in their reply, for most of the discovery period, particularly during the 88-day discovery extension leading up to the close of discovery, the parties appear to have been diligently working to resolve many of the discovery issues in this case without court intervention.  In other words, this is not a case in which plaintiffs have failed to show that they acted with any diligence with respect to discovery.

2

The court next assesses the importance of the modification.  Plaintiffs contend that the requested discovery and depositions are "highly important."  Ps. Br. (ECF No. 69) at 9.  They maintain that depositions are necessary to develop the factual record concerning defendants' coding practices, decision-making processes, vendor involvement, and miscoding of plaintiffs' claims and subsequent losses in a way that written discovery cannot accomplish; that third-party vendor communications are important because they relate to the coding of hospital medicine services, the interpretation of coding guidelines and how those guidelines applied to certain groups or claims, and the decreases in client revenue as a result of coding

changes; and that if discovery is not reopened, plaintiffs will effectively lose their opportunity to present the case on the merits "because written discovery and Defendants' limited productions have not adequately explained the precise coding changes Defendants implemented, the cause or reasoning behind those changes, or the full scope of the claims affected." *Id*.

The court agrees that the discovery plaintiffs seek is important. As this court has previously explained:

> The spirit of the Rules is to decide cases on the merits. To that end, the scope of discovery, while not unlimited, is broad nonetheless. Parties have the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." And that right is enforceable, such as through motions to compel the production of documents. . . . Permitting [plaintiff] to pursue discovery within the scope of Rule 26(b)(1) is important.

*Hanley v. Kroger Co.*, 2025 WL 992579, at \*3 (N.D. Tex. Apr. 2, 2025) (Fitzwater, J.) (citations omitted). Here, too, permitting plaintiffs to take depositions and obtain third-party discovery concerning defendants' coding practices is important.

3

Finally, under the third and fourth factors, the court considers the potential prejudice in allowing the modification and the availability of a continuance to cure such prejudice. Defendants maintain that they have already filed a no-evidence motion for summary judgment and that, if discovery is reopened, they will be forced to spend thousands, if not tens of thousands, of dollars responding to plaintiffs' second written discovery requests to

Ventra and participating in an unspecified number of depositions.

The court finds that the third and fourth factors weigh in favor of granting the motion. Regarding increased expenses, this court has explained that

> [w]hen a court permits one party to obtain additional discovery after the original deadline, it is often the case that the opposing party will incur legal fees and expenses that it would not otherwise have expended. Merely because the opposing party will incur these fees and expenses, however, does not mean that it has been prejudiced in the sense relevant here. This is so because it can be inferred that the expenses would have been incurred had the discovery been sought before the deadline. Prejudice in the relevant sense comes into play when the opposing party incurs unnecessary expenses as a result of the timing of the additional discovery.

*Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.*, 2021 WL 4822017, at \*11 (N.D. Tex. Oct. 15, 2021) (Fitzwater, J). Defendants have not "demonstrated prejudice in the relevant sense, i.e., that it will incur unnecessary discovery-related legal fees and expenses due to the modification of the [Amended] Scheduling Order rather than the fact that additional discovery is being permitted." *Id.*

With respect to the fourth factor, the parties have already consented to continue the trial of this case to the court's November 9, 2026 two-week docket. The court therefore concludes that the third and fourth factors weigh in favor of a finding of good cause.

4

Assessing the four factors holistically, the court concludes that plaintiffs have established good cause to modify the Amended Scheduling Order. The court "does not mechanically count the number of factors that favor each side[,] [a]nd it remembers at all

- 29 -

times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order." *Serv. Temps, Inc.*, 2009 WL 3294863, at *3. Plaintiffs have offered a satisfactory explanation for the delay in noticing depositions and seeking documents from OMH and Global (defendants' suggestion that it required a list of the claims at issue in the case prior to depositions and suggestion that it was continuing to search for third-party vendor information), the motion is important insofar as it will enable plaintiffs to develop key facts related to the central issues in the case, and defendants have not demonstrated that they will be prejudiced if the court grants an extension of the discovery deadline so that plaintiffs can take six depositions and obtain documents from two non-party vendors. Accordingly, the court grants the motion.

To enable the parties to meet and confer, for plaintiffs to fulfill discovery obligations that stem from agreements reached during that process, and for any appropriate follow-up discovery to be completed, the court extends the discovery deadline 60 days from the date this memorandum opinion and order is filed.

D

The court denies defendants' motion to quash. In support of their motion, defendants maintain that (1) the supoenas are untimely under the Amended Scheduling Order and (2) the subpoena to OMH violates Rule 45(c)(2) by requiring a nonparty to produce its documents at a place more than 100 miles of where OMH conducts business. Because the court today is extending the discovery deadline, the nonparty subpoenas are no longer untimely. And to the extent that defendants move to quash plaintiffs' subpoena to OMH on

- 30 -

the ground that it violates Rule 45(c)(2), it is not clear to the court that defendants have standing to assert this challenge. *See, e.g.*, *Williams v. Watts*, 2026 WL 1786765, at *2 (N.D. Tex. June 22, 2026) (Fitzwater, J.) ("To have standing, [t]he movant must be in possession or control of the requested material; be the person to whom the subpoena is issued; or have a personal right or privilege in the subject matter of the subpoena." (alteration in original) (internal quotation marks omitted) (quoting *MC Trilogy Tex., LLC v. City of Heath, Tex.*, 2023 WL 5918925, at *9 (N.D. Tex. Sept. 11, 2023) (Fitzwater, J.)).

*       *       *

Accordingly, for the reasons explained, the court in part grants Ventra's motion to compel and in part orders the parties to meet and confer and submit a joint status report within 28 days from the date this memorandum opinion and order is filed; grants plaintiffs' motion to reopen discovery and extends the discovery deadline 60 days from the date this memorandum opinion and order is filed; and denies defendants' motion to quash.

**SO ORDERED**.

July 22, 2026.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 31 -